## Meade County Board of Education et al. v. Powell.

(Decided May 4, 1934.)

(As Modified on Denial of Rehearing June 12, 1934.)

WOODWARD, HAMILTON & HOBSON and HARDIN, WALLS & WHITWORTH for appellants.

FAUREST & FAUREST for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The Meade County Board of Education removed L. H. Powell, superintendent of schools, and thereupon Powell sued the board in equity in the Meade circuit court, alleging that the board in removing him had acted arbitrarily and capriciously, had abused its discretion, and removed him for insufficient cause; the circuit court found his petition meritorious and entered a judgment restraining the board from removing him, and it has appealed.

This is a case similar to that of Howard v. Bell County Board of Education, 247 Ky. 586, 57 S. W. (2d) 466. There is no need that we should review all of the charges made against Powell by the board, or even that we should state or review the evidence as to all of those upon which he was found guilty. If there was evidence in regard to any one of them sufficient to show the board did not abuse its discretion in doing what it did, then the board's action must stand.

## Failure to Visit the Schools.

By section 4404a, Ky. Stats., it was the duty of Mr. Powell as county superintendent of schools to visit each subdistrict school of his county. That does not mean visit the schoolhouses when there is no one there; it means visit the schools while in session, for how else can he learn anything of the efficiency of the teacher, the method of instruction, the conduct of the pupils, the discipline, the government of the school, and other things which he is required by section 4404a, Ky. Stats., to learn and to note in a book he must keep for that purpose. Neither does it mean this visit can be perfunctorily made, at any time. It means a visit made in good faith, and it should not be postponed until the schools are about to close, but it should be a timely visit, so that youthful teachers may by the superintendent be aided and advised in the conduct of their schools, and that erroneous methods may be supplanted by proper ones, and the schools be thereby made more efficient.

Powell's position as to this charge as finally developed by pleading and proof is largely that of confession and avoidance.

## School Year 1930-31.

His visit to the school at Oak Grove was made, so the teacher testifies, while the school was in recess, he

brought with him a Mr. Sporing, and they were soliciting subscriptions to the "College Graduates Foundation," and that as soon as they had obtained his agreement to contribute $25 thereto, they left. Powell admitted all this, but says he remained until recess was over and the school was called to order, that he made a talk to the pupils, distributed some pictures of Lincoln, and that he saw the school in operation.

## School Year 1931-32.

The teacher of the school at Black Jack testified Powell did not visit this school, but Powell says he did visit it in December, 1931, and read from the record he is required to make the information he is required to obtain on such a visit; but in view of the fact that he could easily have made that up from records in his office, but little weight can be given to such a self-serving declaration.

The teacher of the Hall School testified Powell did not visit that school, and Powell for excuse says this school was closed when he got there. The fact that this school was closed and Mr. Powell did not visit it did not keep the notation in his book from being full and complete, which shows how little weight should be given to such book entries. Powell testifies he got to this school before 3 p. m. and found it closed, and that he never went back because from exhaustion of money this school closed two weeks sooner than he anticipated.

Both of the techers of the Hynes School testified Powell failed to visit that school. Powell testified he visited this school, that he got there between 2:45 and 3 p. m., and the school had adjourned for the day. The teachers when recalled said they never dismissed school before 3:30 p. m.; that after that they swept out the building and attended to other matters that required them to stay about 40 or more minutes longer.

The teacher of the Big Spring School testified Powell failed to visit it. Powell testified he did and again read his record of his visit.

## School Year 1932-33.

The teacher of the school at Cedar Flat testified Powell failed to visit that school. This is another school Powell claims to have visited after school had been closed for the day, but when his book was examined it

showed his visit to this school was made in the fore-noon. When confronted with that, Powell said this visit was made with Dr. Blair, in the summer vacation, before the school opened, and was made at a time when the children had been specially called in for some sort of medical examination and serum treatment. His final position is that he did not visit this school while it was in session, because due to financial shortage the school closed two weeks sooner than anticipated.

The teacher of the Buck Grove School testified Powell failed to visit it, and a sister of this teacher says Powell told her the reason he did not visit her brother's school was because it was raining when he was in that neighborhood. Powell denies saying that to her. Powell had not been charged in pleading with failure to visit this school, but after Powell had testified he visited every school in the county except the one at Cedar Flat, the evidence of his failure to visit this Buck Grove School was admissible to contradict him. The same is perhaps true of the school at Big Spring.

Thus we have a number of contradictions in the evidence about the visitation of schools by Mr. Powell. This is not a case of Mr. Powell being contradicted a half dozen times by the same witness, but of his being contradicted by half a dozen different witnesses, about a half dozen different matters.

There is some evidence of bias on the part of some of these teachers, but that is matched by the evident interest of Mr. Powell. This evidence was before the board; it saw, as well as heard, all these witnesses.

### The Question Before the Board.

It was for the board to weigh and consider this evidence, to determine its competency, its relevancy, its probative effect, and its sufficiency, and from such finding to take such official action as it was by section 4399a-7, Ky. Stats., authorized to take in its discretion. It chose to remove Mr. Powell. That is one of the powers conferred on the board by the statute just quoted. There is no provision made for an appeal from such action of the board, and this action as begun in the Meade circuit court, and as it stands in this court, is in no sense an appeal from the action of the board. There is no provision in the law for the courts to undo what the board has done, so the question becomes this:

## What Power Have the Courts in the Matter?

The power and duty of the courts is thus stated in 32 C. J. p. 242, sec. 384:

"Where public officials are intrusted with discretionary power in certain matters, their exercise of such discretion will not be controlled by injunction in the absence of any showing that their action is fraudulent or in bad faith, or that it amounts to an abuse of the discretion so vested in them, and this is so although the powers vested in such officers are quasi judicial as well as administrative; and specially is this true where the restraining of the officer's action would impose a. large additional expense on the public. Courts will not hear proof and attempt to determine whether the discretion is wisely exercised or not. Where the law casts both a right and a duty upon an officer which involves exercise of discretion, the officer's conduct with respect to his duty or discretion is no more to be controlled by injunction than by mandamus. Interference in such a case would be to interfere with the ordinary functions of government. Courts cannot legislate or invade the province of the other departments of government in matters of policy. However, the general rule has no application where there has been fraud or collusions on the part of the public officer in the performance of his duty, and an injunction may be issued in case of a gross abuse of discretion, but to constitute an abuse of such discretion it must appear that it was exercised on grounds or for reasons clearly untenable, or to the extent clearly unreasonable."

This is not like an ordinary equity case where this court reviews the evidence, weighs it, and enters such judgment as we may find proper in the premises. We do not retry cases like this, as we pointed out in the Howard case, supra. To do so would be to exercise an appellate jurisdiction over the action of this board which the legislative department has not conferred upon this court or upon the circuit court, to whose jurisdiction we have succeeded by this appeal.

## Our Conclusion.

Whether the board's removal of Mr. Powell was politic or impolitic, commendable or uncommendable,

wise or otherwise, is not for us to say. We are limited to this: Did the board act arbitrarily? Did it act corruptly? Did it act without credible, competent, and relevant evidence? Did it transcend its authority? Did it act capriciously? Did it abuse its discretion? In other words: Did it act unlawfully? The answer to these questions is: "No." Unless it clearly appeared this board had acted unlawfully, courts should be slow to restrain or limit their action by injunction or otherwise. If it definitely appears that officers or boards are proceeding unlawfully, courts will unhesitatingly interfere; but such unlawfulness must clearly and affirmatively appear. Von Herberg v. City of Seattle, 157 Wash. 141, 288 P. 646, 70 A. L. R. 417.

By sections 27 and 28, Ky. Constitution, the powers of government are divided, and no person or persons of one department is allowed to exercise any power properly belonging to another. This board of education is an administrative body, organized under the executive department and charged with the operation of the schools in Meade county, and so long as its acts are lawful and within the scope of its authority, the courts should not interfere with them.

Courts cannot inquire into the motives of the board, and cannot say the testimony of one witness should be believed rather than that of another, and in this case, where it is conceded the removal of Powell was within the scope of this board's authority, there is but one question left, and that is: Did the board have before it any competent and relevant evidence? The answer is, "Yes," and that is the end of it. The board's action may have been harsh, it may have been vindictive, but under the evidence it was not unlawful.

"Equity will not interfere, as long as such officers are acting within the authority conferred on them by law, to determine whether their action is good or bad." High on Injunctions (2d Ed.) sec. 1309.

Therefore the trial court erred when it enjoined the board, and the judgment is reversed, with directions to dismiss the petition.